IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN GERHART, *et al.*, : | |
| Plaintiffs, : | |
| : | Civil No. 5:20-cv-01401-JMG |
| v. : | |
| : | |
| PROGRESSIVE PREFERRED INSURANCE : | |
| COMPANY, : | |
| Defendant. : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                              **August 20, 2021**

Plaintiffs Steven and Mary Gerhart bring this underinsured motorist claim against Defendant Progressive Preferred Insurance Company ("Progressive") following a motorcycle accident in July 2018. Plaintiffs now move for leave to add a bad faith claim to their complaint. For the reasons discussed below, the motion will be granted.

**I.   BACKGROUND**

Plaintiff Steven Gerhart was riding his motorcycle when he collided into a non-party tortfeasor's vehicle. (Compl. ¶¶ 5–7, ECF No. 1.) The non-party tortfeasor was allegedly underinsured. (*Id.* ¶ 18.)

Plaintiffs' insurance policy from Progressive provided a $300,000 limit in underinsured motorist benefits. (*Id.* ¶ 20.) Several months after the accident, Plaintiffs informed Progressive that they would pursue an underinsured motorist claim. (*Id.* ¶ 22.)

Progressive first offered $35,225 to settle the claim. (*Id.* ¶ 23.) This was, as Plaintiffs allege, "grossly insufficient" to cover Mr. Gerhart's medical expenses. (*Id.* ¶¶ 24–25.) Indeed, the offer would not cover an outstanding $49,825.73 ERISA lien against Mr. Gerhart. (*See* Pls.'

Mem. 2, ECF No. 24-2.)

Throughout this litigation, including at an initial settlement conference before Magistrate Judge Timothy Rice, Progressive has disputed the validity of the lien. (*Id.* at 3.) Progressive has maintained this position even though Plaintiffs: (1) provided "all available supporting documents" concerning the lien; (2) produced a supporting affidavit from the plan's administrator; and (3) consented to a deposition of that administrator, which was held on December 10, 2020. (*Id.* at 2–4.) Once armed with this information, Progressive increased its settlement offer to $93,200 on December 16, 2020. (*Id.* at 4–5.)

Talks then stalled until June 2021, when we again referred the parties to Judge Rice for a settlement conference. (*See* ECF Nos. 9, 19.) Just as with the previous settlement conference, and even though the facts of the case had not changed, Progressive still challenged the lien. (Pls.' Mem. 5–6.) Specifically, Progressive demanded a Form 5500[1] "or other documents to show" the validity of the lien. (*Id.* at 6.)

The parties appeared before Judge Rice on June 4, 2021, but the continued "failure of Defendant to accept the validity of the ERISA lien . . . made settlement of the claim impossible." (*Id.*) Then, a mere three days later, Progressive suddenly accepted the lien and factored it into a settlement offer. By June 8, Progressive offered Plaintiffs $100,000, "inclusive of the lien with room to move." (*Id.*) As Plaintiffs see it, this new offer, though nominally larger than the previous one, actually reflected a reduction in value: "In effect, Defendant decreased the amount of its offer because the lien had never been factored into any settlement until June 8, 2021 and, instead of adding the lien to its existing offer of $100,000 for a total of $149,825.73, it included the lien in

---

[1] Mr. Gerhart apparently worked for an employer with less than 100 employees, so the company never filed a Form 5500. Testimony from the lien administrator corroborates this point. (*See* Pls.' Mem. 4.)

its offer." (*Id.* at 6–7.)

Settlement discussions ultimately fell through. On June 22, 2021, Plaintiffs' counsel sent Progressive a letter "reviewing several of the ways in which [Progressive] failed to act in good faith during the pendency of this litigation." (*Id.* at 7; *see also* Pls.' Mem. Ex. D, ECF No. 24-1.) The letter describes Progressive's repeated objections to Mr. Gerhart's ERISA lien and its insistence—even after conducting discovery—on further documentation in support of that lien. Progressive did not respond, so this motion followed.

**II.     STANDARD**

Resolution of Plaintiffs' motion turns on Federal Rules of Civil Procedure 15 and 16. "Once the court files a pretrial scheduling order, pursuant to Rule 16 which established a timetable for amending pleadings, that rule's standards control." *Price v. Trans Union, LLC*, 737 F. Supp. 2d 276, 279 (E.D. Pa. 2010). To amend a pleading under Rule 16, a party must show good cause. *Id.* "'Good cause' under Rule 16(b) focuses on the diligence of the party seeking the modification of the scheduling order." *Id.* Where "the party knows or is in possession of the information that forms the basis of the later motion to amend at the outset of the litigation, the party is presumptively not diligent." *Id.* at 280.

"Once good cause is shown, a court may determine whether justice requires the amendment under Rule 15." *Banks v. City of Phila.*, 309 F.R.D. 287, 293 n.4 (E.D. Pa. 2015); *see also* FED. R. CIV. P. 15(a)(2) ("The court should freely give leave when justice so requires."). "Given the liberal standard under Rule 15(a)," the burden rests with Progressive—the party opposing amendment—to show "prejudice, bad faith, undue delay, or futility." *White v. Bush*, No. 20-2059-KSM, 2021 WL 2255981, at *6 (E.D. Pa. June 3, 2021) (internal quotation marks and citations omitted).

### III. DISCUSSION

#### A. Rule 16

Plaintiffs' motion comes on the eve of trial, long after the deadline to amend the pleadings. As a result, our analysis begins with Rule 16. *See Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 701 (E.D. Pa. 2007) ("[O]nce the pretrial scheduling order's deadline for filing motions to amend the pleadings has passed, a party must, under Rule 16(b), demonstrate 'good cause' for its failure to comply with the scheduling order before the trial court can consider, under Rule 15(a), the party's motion to amend its pleading.").

The proposed amended complaint raises issues that could not have been known to Plaintiffs at the beginning of this litigation. For example, it includes, *inter alia*, allegations that Progressive used "dilatory claims handling practices" (Pls.' Mem. Ex. A ¶ 108(c), ECF No. 24-1); that Progressive made "unreasonably low settlement offers" and failed "to offer full value of the claim in a timely manner" (*id.* ¶¶ 108(i)–(j)); that Progressive repeatedly challenged Mr. Gerhart's ERISA lien "when it had no good faith basis to do so" (*id.* ¶¶ 108(y)–(bb)); and that Progressive forced Plaintiffs "to engage in unnecessary discovery regarding the ERISA lien" (*id.* ¶¶ 108(ll)), all of which constitute an unreasonable refusal to settle the claim. *See, e.g.*, *Kakule v. Progressive Cas. Ins. Co.*, No. Civ. A. 06-4995, 2007 WL 1810667, at *5–6 (E.D. Pa. June 20, 2007).

This information was not discoverable before the amendment deadline of June 5, 2020, let alone at the outset of the suit. Plaintiffs could not have known that Progressive would still dispute the lien—and disrupt settlement negotiations—even after receiving an affidavit and conducting a deposition on the topic. Therefore, Plaintiffs have shown good cause, despite Progressive's arguments to the contrary. *See, e.g.*, *Cardone Indus., Inc. v. Honeywell Int'l, Inc.*, No. 13-4484, 2014 WL 3389112, at *2 (E.D. Pa. July 14, 2014) (finding good cause where a party offered "a

4

clear and cognizable explanation why the proposed amendment was not included in the original pleading" (internal quotation marks omitted)).

**B.     Rule 15**

Having found good cause under Rule 16, we now turn to Rule 15.  Here, the burden is on Progressive "to show prejudice, bad faith, undue delay, or futility." *White*, 2021 WL 2255981, at *6 (internal quotation marks and citations omitted).  Progressive contends that all four grounds are present here.  We examine these grounds in turn.

First, "[a]s to prejudice, the Court of Appeals has considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Bobak v. LM Gen. Ins. Co.*, No. 2:18-cv-01615-MJH, 2020 U.S. Dist. LEXIS 229399, at *5–6 (W.D. Pa. Dec. 2, 2020) (internal quotation marks and citation omitted).  To be sure, allowing amendment would "necessitate the reopening of discovery and increased costs to the parties." *Id.* at *6.  This certainly suggests prejudice to Progressive.

At the same time, though, "the need for additional discovery due to amendment does not, without more, prejudice the non-moving party." *Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 228 (E.D. Pa. 2012) (citing *Dole v. Arco Chem. Co.*, 921 F.2d 484, 488 (3d Cir. 1990)).  And Progressive has put itself in this position by allegedly obstructing settlement efforts.  Progressive argues that granting Plaintiffs' motion would cause unnecessary delay, but it is *Progressive's* own conduct that has allegedly delayed resolution of this case.  (*See, e.g.*, Pls.' Mem. Ex. A ¶ 108(mm) (alleging that Progressive "fail[ed] to respond to Plaintiff's inquiries and communications regarding its acceptance of the ERISA lien").)  We therefore decline to find prejudice here.

Next, Progressive argues that Plaintiffs "acted in bad faith in filing the Motion to Amend on the eve of trial." (Def.'s Mem. 6, ECF No. 6.)  We are not convinced.  Per the Third Circuit,

bad faith includes "some indication of an intention advancement of a baseless contention that is made for an ulterior purpose, *e.g.*, harassment or delay." *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986) (citing *Baker Indus., Inc. v. Cerberus, Ltd.*, 764 F.2d 204, 223 (3d Cir. 1985)). Based on the parties' submissions, we cannot conclude that Plaintiffs' motion is motivated by some improper purpose.

Plaintiffs' motion is also not the product of undue delay. "[T]he length of delay is rarely dispositive." *Militello v. Allstate Prop. & Cas. Ins. Co.*, No. 14-cv-0240, 2015 WL 3752617, at *3 (M.D. Pa. June 16, 2015). Rather, we focus on "the reasons why the movant did not amend sooner." *Id.* (citing *Arthur v. Maersk, Inc.*, 434 F.3d 196, 205 n.11 (3d Cir. 2006)).

Progressive emphasizes that Plaintiffs filed the instant motion six months after the deposition of ERISA plan's administrator. (Def.'s Mem. 6.) But this fact, standing alone, is not dispositive. Indeed, much of the proposed bad faith claim centers on Progressive's conduct in the lead-up to the June 9, 2021 settlement conference. (*See, e.g.*, Pls.' Mem. Ex. A ¶¶ 108(z)–(dd).) Plaintiffs brought the motion shortly after Progressive's continued objections to the lien caused those settlement talks to collapse. The full scope of Plaintiffs' bad faith claim did not become clear until June 2021, so any delay in seeking amendment was not undue.

Finally, in evaluating the futility of Plaintiffs' proposed bad faith claim, we apply "the same standard of legal sufficiency used in Rule 12(b)(6) motions." *Cardone*, 2014 WL 3389112, at *5 (citing *DiCicco v. Willow Grove Bank*, 308 F. Supp. 2d 528, 532 (E.D. Pa. 2004)). "As such, [t]he trial court may thus deny leave to amend where the amendment would not withstand a motion to dismiss." *Id.* (quoting *Synthes*, 281 F.R.D. at 229). "If a proposed amendment is not clearly futile, then denial of leave to amend is improper." *Synthes*, 281 F.R.D. at 229 (quoting 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 1990));

6

*see also Ogelsby v. Ferguson*, No. 1 9-cv-5598, 2021 WL 2935987, at *7 (E.D. Pa. July 13, 2021) ("Given the liberal standard for amendment, . . . courts place a heavy burden on opponents who wish to declare a proposed amendment futile." (internal quotation marks and citation omitted)).

We decline to find futility here. Progressive does not show that Plaintiffs' proposed bad faith claim is legally frivolous; instead, it only stresses that "the bad faith action and [the underinsured motorist] action would not be tried or heard at the same time."[2] (Def.'s Mem. 6.) Even if that were the case, it does not mean that the proposed bad faith claim is without merit. In other words, the potential for a bifurcated trial does not render the bad faith claim futile.

## IV. CONCLUSION

Although the deadline to amend the pleadings has passed, Plaintiffs show good cause to bring a bad faith claim against Progressive. For that reason, and because Progressive has not demonstrated prejudice, bad faith, undue delay, or futility, Plaintiffs will be permitted to amend their complaint. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

---

[2] In support, Progressive cites to *Moninghoff v. Tillet*, No. 11-7406, 2012 U.S. Dist. LEXIS 190896 (E.D. Pa. June 28, 2012). There, the plaintiff brought bad faith and underinsured motorist claims against an insurer. The court, however, did not opine on the plausibility of the bad faith claim. Rather, pursuant to Federal Rule of Civil Procedure 42(b), it merely stayed the bad faith claim pending resolution of the underinsured motorist claim. *Id.* at *2; *see also* FED. R. CIV. P. 42(b) ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims.").